My name is Dan Pulsenberg and I represent the appellant in this case, Granite Rock. This case involves the question of whether the expense of a conveyor belt to remove overburden from an open pit mine can be expensed in that single year or whether it has to be capitalized. Granite Rock operated the A.R. Wilson Quarry, a granite quarry, and it's operated it for about 100 years. In granite quarries, you remove the sand and dirt and clay overburden and you take it to a disposal site and then you expose the quarry, which can be mined, and take to processing. You're relying on the receding face reg, are you not? Both the regulation... Or the case which generated that particular recognition? Exactly right, Your Honor. In Marsh Fork, the Fourth Circuit established the law in there without relying on a doctrine. And, in fact, what Judge Parker said in that case basically was it makes sense in mining when you're looking at the expense of getting to that particular ore, their call here granite, that you would take that as an expense of getting that granite because, otherwise, if you capitalize it, you're making the granite you're receiving right now unrealistically profitable and the granite that you would mine later unrealistically expensive. And after the case, the I.R.S. codified the regulation we have here. It's a rough approximation, and if you read the case and the regulation together, they seem to mean the same thing. Well, I'm interested in your showing. What are you relying on with respect to the showing in this case that you come within that regulation? We come within this regulation for a number of reasons. First of all, the expenditures to put in the new conveyor belt, and we're only talking about the conveyor belt here and not the purchase of land. The expenditure for the new conveyor belt was solely to maintain the normal output, to maintain current levels. But isn't there a problem there in that the efficiency of the belt doubled your capacity to reach the granite? No, it did not increase the production of our mine. At the end of their answering brief, they say there are questions of fact raised here, but their questions of fact only go to the capacity of the conveyor belt. Here, what we're talking about is, remember, the regulation says normal output, and the case, I believe, talks about production. The mine cannot produce any more efficiently because of this conveyor belt. The conveyor belt was originally going to have the same capacity. It's arguable it still has the same capacity, but they operate it a little higher. What happened was before, under the old conveyor belt system and the old dump site, we wanted to have one year's cushion, as we call it in there, to get enough overburden off so that we can access the granite during the rainy season. We cannot remove the overburden during certain parts of the year. We can mine during those parts of the year. So we want to have enough overburden removed so that we can access the granite. So there was, as I understand your position is, there was no change in capacity with the new conveyor belt versus the old one. Absolutely, there was no change in mine capacity. What precipitated the purchase of the new conveyor belt? And you can wait to fill your glass. We'll see whether I can do two things at once. What precipitated was that we'd been operating this mine since roughly 1900. In the late 1980s, we realized that the two pits that we're using on our property were going to become full. So we needed to have a new dump site just to maintain the same capacity. The whole idea of the recession-face doctrine is based on excavation. Some of the cases look at it as increasing the size of the hole on one end, the flooding cases, for example, and the escape cases. So if the original disposal site or sites had unlimited capacity, there would have been no need to have a new conveyor belt? Well, here's what Judge Ware said. Why don't you start with a yes or a no? Thank you, Your Honor. If they had unlimited capacity, there still would have been need for an extension of the conveyor belt. And that was what Judge Ware's problem was. He said if we had just been one pit that went on forever and we had to keep extending the conveyor belt, that would have been no problem. It was the change of the dump site that caused his problem, right? It is. And even then, he said, if we could have moved that same conveyor belt and added on to it to go to the new dump site rather than just adding a new conveyor belt, he didn't seem to have had a problem. But doesn't that new dump site increase the value of the whole property? No, it doesn't. Let me amend that answer. Yes, it does. But that's why we're not trying. It's a major amendment. But what I was looking at, I was interpreting your question incorrectly. The conveyor belt does not add.  It clearly does. And we're not asking for the expense of the dump site. That's facilitated by this investment in the conveyor belt. Well, in the Kennecott copper case, that's what the court was talking about. And in dicta, the court said if the mining company there had simply obtained rights to dump on the property, that might have been expensed. But there they achieved other rights as well. Here, we're not talking about the dump site itself. We're just talking about a conveyor belt. We're getting a new conveyor belt instead of an old conveyor belt or extending the old conveyor belt. But that has never been a problem. Even in Marsh Fork, the court allowed the expense of an entirely new locomotive, an additional locomotive. And so here, I think we're falling into the trap of minor versus major, which is what the IRS used to argue, whether it's a minor expense or a major expense. And that is something Judge Ware had trouble with too. This conveyor belt and the dump site is going to be operational for 10 to 12 years. But the locomotive in Marsh Fork was going to be able to be used for 8 to 10 years. The fact that it's new versus old shouldn't be the factor. The fact that it's a major expense versus a minor expense shouldn't be the factor. The factor should be, as Judge Parker said in Marsh Fork, and as he said 22 years later when he was chief judge in H.E. Harmon, the factor is whether it is to maintain production, solely to maintain production as the mining face receives. The nature of mining is that you have the excavation, you have the removal of materials. It creates unique problems. But if you increase production, what if you have to put two conveyors in? Well, first of all, that wouldn't increase production here because it wouldn't change the way that we could move the granite. If you had two mine faces, wouldn't it? If we operated two mine faces, that would be different, yes. If we operated a different mine face, however, that wouldn't be different. As the Sixth Circuit said in the United States gypsum, when the mining company there moved from one mine face to another mine face, the IRS said, no, you're jumping to an entirely different location. And the Sixth Circuit said, no, it's still the nature of a receding mine. You have the excavation, you've moved to another location and you have it. They still allowed the second, the new mine face to be deducted. For the same reason, I don't think the fact that we went to a new dump site should be different. It was an expense only to maintain current production. And it did not increase the value of the mine. And here's where Judge Parker seems to be saying the word solely comes in. It's solely to maintain production and not increase the value of the mine or decrease costs. Your position, as I understand it, is that the taking off the overlay to enable your client to mine the granite, harvest the granite, was being done with the old conveyor belt, and that was necessary for receding face purposes? Exactly. Do we know how it was treated tax-wise, the old conveyor belt? We do not know from this record, but the old conveyor belt, under the receding mine face doctrine, you have to already be fully operational. So if the old conveyor belt was put in when the mine was opened, it would have had to have been capitalized. The receding mine face doctrine only applies after you are fully operational. So if we were starting a mine here and putting in a conveyor belt, it would have to be capitalized. Are these findings by the district court, are they findings of fact or are they conclusions of law here? Since it was cross motions for summary judgment, one could say that they aren't findings of fact. I think there was very little disagreement in the district court as to essential facts. But any inferences that you would draw against me from the facts, if the case turned on those inferences, then summary judgment would be inappropriate. Did I have your question correctly? I think so. The court here is determining whether, in fact, the operation of this conveyor belt meets the criteria of the regulation, right? Exactly right. If there are no further questions, I'll save the balance of my time. Please do so, counsel. Thank you. We'll hear from the government. May it please the Court, good morning. My name is Theresa McLaughlin and I represent the government. Welcome. And the government's position is that this new conveyor belt does not fall within the receding face doctrine. It's clear that this conveyor belt is obviously capital in nature and it would have to fall within, it would have to satisfy four requirements in order to qualify for current deduction. First, the belt would have to be necessary to maintain normal output. For purposes of our summary judgment motion, which the court granted, we don't dispute that. We did, however, raise in opposition to the taxpayer's motion whether the conveyor belt was necessary at that time, because during discovery a point of fact was raised that the old conveyor belt ceased operations in 1993, while the new one didn't start until 1995. So there was at least a question of when, you know, what proper year it would be necessary to start the conveyor. For purposes of this appeal, you don't contest that point. Right. Second, and this is very critical, the expenditure has to be solely because of the recession of the working face of the mine. Give me an example of a piece of equipment for this type of mining that would qualify under the receding face regulation. Well, if you are making an expenditure that's necessitated by the fact that the mine is going away from you, if you're laying, it's hard to illustrate with an open pit, because these people didn't need to move their in-pit crusher, nor did they need to move their plant. But suppose they had to lay a conveyor belt going closer to the receding face of the granite wall. That would qualify. That would qualify. That might qualify. Going towards the mine, yes. But the fact that the conveyor belt goes to a disposal site that fills up. I would have trouble. And requires the company to install a new conveyor belt to go to a new disposal site going away from the mine, that doesn't qualify. Right. I have trouble with anything going away from the mouth of the mine. Where did this conveyor belt start? Did it start up at the working face, or was there a crusher in between or something? I am not sure, but I think it was near the processing plant, which I guess in an open pit would be outside. Are you saying that the conveyor belt then did not have to be extended toward the working face at all? I don't think it did. They used scrapers that could get 20 tons of overburden on them, and then they dumped them on the conveyor belt. Do you agree that this mine, in fact, had a receding face? Yes. And do you agree that the removal of the overburden was necessary for the mining operations? Yes. Then why doesn't it qualify? Well, this is not the type of ‑‑ well, first of all, it's going away from the mine. It's not to get you closer to the ‑‑ How does that help us decide the issue of solely? Well, in the case law that's developed, and this is a regulation that actually was developed from case law, the types of expenditures that don't qualify have to do with ‑‑ don't have to do with the fact that the mine is going away from you. For instance, in the Harmon Coal case, the equipment that didn't qualify for deduction was necessitated because of the thinness of the coal seam and also a change in the nature of the coal being mined. It became feathery, and they had to get a new machine. What's the purpose of this regulation? The purpose of the regulation is ‑‑ Because ordinarily you'd have to expense these over time, equipment related to any business, including mining.  Why? What's the purpose? The rationale is you start from the question, is it fair to charge the coal that's being ‑‑ or the coal, I'm sorry. Here it's granite. The substance that's being mined in the taxable year, is it fair to charge it against ‑‑ if you capitalize it, you are charging the expense against the future units of production. And when a coal mine gets deeper and deeper and you have to lay track or you have to deepen your elevator, what happens is the units of the cost per unit, if you charge it against the future units, I guess it's that you would be putting more investment in. I'm sorry, your turn. I was going to say, there's a profit net income result which affects the taxability. I think that's what you're referring to, isn't it? Yes. And here it's totally happenstance that this hole happens to be full. And, you know, they make an expenditure to, you know, get dumping rights for a new place. And ‑‑ That's not part of what they're claiming, though, is it? No, but ‑‑ It's the cost of the conveyor belt, right? But it's the same thing. That's the $21 million, right? The $21 million is the conveyor belt, but ‑‑ And your point is that the conveyor belt does not approach the face of the mine. It goes in a different direction.  That's what this case turns on from the IRS point of view. Exactly, Your Honor. And that's what ‑‑ and the expenditures that have been allowed are the ones that are caused by the fact that the face of the mine is receding, not that you're running out of capacity to put spoil in. But I may be missing something here. When you take granite out, the face is going away from you, right? Yes. But you aren't having to ‑‑ they haven't had to move their pit crusher. They haven't had to move their processing plant closer. They haven't had ‑‑ they're not laying track to make, to facilitate. How does the granite get to the crusher from the face? They have scrapers that have a 20‑ton capacity, and they ‑‑ These are the giant trucks of some sort? Well, yeah, I think they must be gigantic if they can carry 20 tons of ‑‑ These are mobile units. Yes. These are not fixed. Okay. Right. So it's not a case where, as in a coal mine, you need to lay track or you need to extend electric lines to get you closer to the face of the mine. It has nothing to do with that because it's an open pit. It's just that you need a place to put the spoil. And your view is that this was ‑‑ the primary purpose of this conveyor equipment was to create a new place for putting the spoil? A new place to put the spoil. And that should be treated as a capital expense and amortized over the useful life of the conveyor? That's right. And there's also an issue that the expenditure must not increase the value of the mine. And if you look at this whole ‑‑ on an enterprise level, you know, you've got a place to dump your spoil and a conveyor belt. This increases the value of the whole operation. And so, therefore, it does run afoul of the regulation for that reason. And also ‑‑ In this ‑‑ on these facts, without a new conveyor belt system, Granite Rock would have been unable to maintain production, right? Well, I agree that there's a need to put the overburden somewhere. That's not the whole equation. But you can truck it off. That's not the whole equation. But the fact is, without it, because the other disposal sites were full, without it, they couldn't maintain normal production. Well, you would need to at least truck it off somewhere or put it in a barge. You could even, you know, put it into orbit. I mean, you have to put your overburden somewhere. So it was necessary to maintain normal production. Well, as I mentioned, for purposes of their motion, there is a question. You know, they were filling in the nooks and crannies of this dump. But, yes. Other than that, yes. Now, counsel says that they were just trying to maintain normal output and this did not increase production or the rate of extraction. Do you agree with that? I have a problem with that, and I was looking during the opening to see if I could find the exact place where I remembered it, and I couldn't. I thought that somewhere in the record it said that this conveyor belt was wider than the old conveyor belt. And I could not find a reference to that, so I may be mistaken. But what significance would that have if it were, in fact, wider? If it's wider, then it has a larger capacity. Now, in fact, in the six years of mining after the conveyor belt, the new conveyor belt went into service, they were able, every year it gained a month. So they had a month cushion. So that at least shows that they were operating it faster. I'm lost a little bit here, and help me out. You know, equipment does get better over time. Automobiles are safer, cleaner. Methods of extracting ore from mines gets better, more efficient, less polluting, et cetera. If a piece of equipment qualified in every other respect under receding face, would the fact that it was more efficient than the equipment it was replacing disqualify it? Yes, because it would decrease the cost of unit production, and that would be a problem under the regulation. But this conveyor belt, in the deposition of one of taxpayers' mining engineers, and this is in the government's factual reputation of the taxpayers' motion, Len Moles was asked, does this conveyor belt, will this conveyor belt go faster than the 3,000 tons per hour that the old one? It was either, did the old one, was the old one able to do 3,000 tons per hour, or could this one go faster, could the new one go faster than 3,000? Okay, imagine a coal mine. Let's take the coal mine example, and they've got to extend the tracks, and it's a regular mine, it's not open pit, and they've got to extend the tracks further in to be able to get to the face as they mine the coal. That track would be okay under receding face, and the cart that runs on it, that would qualify under receding face, or the train or whatever. But if the machine or track or engine that went on the tracks, or indeed the tracks themselves because of modern welding techniques, were more efficient, schools out, they don't qualify. Is that what you're saying? Yes, the regulation says that the piece of equipment must not decrease the cost of production. So anyways, Mr. Moles said that he didn't know whether this one was better, but they were able to get a one-month cushion per year. So even aside from the value of this thing as contributing to the value of the mine, or improving the value of the mine, it may have also been an improvement because it was better. So in our view, the receding face doctrine is very narrow, and the word solely means solely, and the gloss it has developed is for expenses that are necessitated by getting to the receding face. And this one is outside the mouth of the mine. It's a definite improvement that would last for many years, and it doesn't qualify. Unless you have any other questions, we'll rest on our brief. Thank you, Counsel. Mr. Paulsenberg, you have some reserved time. Thank you, Your Honor. Let me just ask you, all we're talking about here is the timing of the deduction. Isn't that right? You either take it all in one year, or you amortize it over, let's say, 10 years, whatever the useful life is of the conveyor. And there's no dispute as to the useful life, is there? There wasn't a dispute in this record. It's roughly 10 years, 10 to 12 years. So the question is, do you take your expense in the year one, or do you take one-tenth of it in the year one and one-tenth rate of lease for the remaining nine years? And that is the under 6-12, that's always the debate, whether you capitalize it or whether you expense it. And $21 million is shot pretty soon. You're talking about real money. Let me ask you about this. This regulation doesn't make sense to me, but I think counsel for the government has pointed to this factor which says even if you need everything else, if it decreases your cost of production, in other words, if it's more efficient. I agree. School's out. Absolutely. If it decreases the cost of production. In other words, if we were able to remove the overburden so much faster that we were able to produce more granite, then yes, it is more than just accommodating the receding face of the mine, it's decreasing the cost of production. But your position is this doesn't do that. This does not do that. And is that clear from the record? That is absolutely clear from the record. And what the government was just saying is, well, for every year, they were able to get a year and a month overburden removed, and that was because for the year or two that they had to remove the overburden with trucks while they were putting in the new conveyor system, they lost that one-year cushion. So in six years, they have gotten halfway to where they were before. So they have not increased their production. They haven't even caught up to where they were, and they haven't decreased the cost. I have note, if we were dealing with exactly the hypothetical I gave, if we were able to remove overburden faster, which allowed us to mine faster and decrease costs, increase production, yes, they'd be right. But that's not what happened here. I'm a little disconcerted that the government is now taking the position that only conveyors going to the mine face extensions would count and nothing moving away from the mine face. That's completely different from their position in the district court. Judge Ware asked the government, and it's a little awkward as transcripts are, in your argument, if they, granted rock, could have simply, when the hole got filled, built an incremental section of what they already had to go to the new hole, would that have been deductible, Mr. Moore, for the government? I think so. It would have, Your Honor. I think so. Just the add-on you're talking about. Yes, but what they were there, they didn't take, the government did not take the position before today that the removal of overburden is not an appropriate application of the receding mine face doctrine. So I'm taken aback by that. In Kennecott Copper, the court ---- As I understand Ms. McLaughlin's point, the actual contact with the receding face is made not by the conveyor belt, but by these scrapers. Is that correct? It is correct. Inside the pit, they have the scrapers right there at the mine face, and they dump it into the conveyor belt. That is correct. The extension here applied only to the other end. So the conveyor belt never moved closer to the receding face? It has not at this point. It was never intended to up to this point, right? No. No. But it has never been their position before that that was the fatal flaw. We handle that issue on pages 13 and 14, but so briefly because all we're pointing out in our opening brief is they've already conceded this point. The purpose of the receding mine face doctrine is definitely, as counsel argued, it comes from Marsh Fork, it is good accounting to say that the expense of getting to this granite should be applied to this granite. Scraping away the overburden and removing it to get to this granite, that cost should apply now to that granite. Your position is that it is supported by an interpretation of the regulation alone. We don't need a new Marsh Fork interpretation to validate your position. Is that right? I think that's true, and I think their interpretation of the regulation ignores Marsh Fork. They're taking solely, it's almost a misplaced modifier in the regulation. It says expenses are necessary to maintain the normal output solely because of the recession of the working face of the mine. Judge Parker said in Marsh Fork that the expenses are made solely for the purpose of maintaining the capacity of the mine as the working face recedes. To me, they say the same thing. They seem to be coming in now and saying that lack of capacity is something different from removal of the overburden. They've never before disputed removal of overburden would be an appropriate expense, but having to put it somewhere is just the obvious outcome of having to excavate it. This falls directly under Marsh Fork. I don't see why we even, and I don't agree that there are any questions of fact here. If there are no further questions, thank you. Thank you, counsel. The case just argued will be submitted for decision, And we will return to the case which was listed first. Jett v. Sikroff.
judges: O'scannlain, Siler , Hawkins